UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------
                                         :

HENRY HERNANDEZ et al.,         :       CASE NO. 1:06-CV-158

                           :

        Plaintiffs,          :

                           :

vs.                           :       OPINION & ORDER

                           :       [Resolving Doc. No. 50]

REGINALD WILKINSON et al.,   :

                           :

        Defendants.        :

                           :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

With this Opinion and Order, the Court considers Defendants' motion for summary judgment based on their assertion of qualified immunity from Plaintiffs' claim for damages under the Civil Rights Act, Section 1983 of Title 42 of the United States Code ("Section 1983").

In this lawsuit, Plaintiff Henry Hernandez ("Hernandez") complains as an individual and as the class representative of former inmates of Ohio's prison system (the "Plaintiffs," collectively) who underwent varying terms and degrees of statutory post-release control following their incarceration. In their initial and amended complaints, Plaintiffs brought suit under Section 1983 as against Terry Collins, Harry E. Hageman, and Cynthia Mauser, senior administrative officials of the Ohio Department of Rehabilitation and Correction and the Adult Parole Authority (the "Defendants," collectively). [Docs. 1, 14.] Plaintiffs sue Defendants in their individual capacities for alleged violations of Plaintiffs' constitutional rights under the First, Eighth, and Fourteenth Amendments. *Id.* Overall, Plaintiffs complain that Defendants "illegally imposed" statutory post-release control on the class members where the presiding Ohio trial courts failed to provide for such

Case No. 1:06-CV-158
Gwin, J.

in Plaintiffs' sentencing journal entries.  *Id.*

As redress for their alleged injuries, Plaintiffs sought, *inter alia*, preliminary and permanent injunctions to enjoin the Ohio Department of Rehabilitation and Correction and Adult Parole Authority from imposing future post-release control under certain parameters.  *Id.*  Pursuant to remedies available under Section 1983, Plaintiffs also requested compensatory and punitive damages, as well as "reasonable attorney's fees."  *Id.*

In response, Defendants agreed to settle Plaintiffs' claims for injunctive relief and raised the defense of qualified immunity as a shield to Plaintiffs' demand for damages. [Docs. 22, 50, 92, 124, 131.]  Beginning in March 2006, Defendants and Plaintiffs cooperated to fashion mutually-acceptable remedies to Plaintiffs' equitable claims.  *See, e.g.*, "Joint Motion to Enter Agreed Provisional Class Certification and Remedial Orders," March 22, 2006 [Doc. 12].  Both sides continued to refine their positions over the ensuing months and, on November 23, 2006, the Court approved the parties' final "Second Revised Agreed Remedial Order," which resolves their outstanding equitable disputes. [Doc. 134.]

Thus, this Opinion and Order addresses issues arising from Defendants' motion for summary judgment on Plaintiffs' claim for damages under Section 1983. [Docs. 50, 92.]  Plaintiffs oppose Defendants' motion. [Doc. 75.]  For the reasons presented below, the Court **GRANTS** Defendants' summary judgment motion and **DISMISSES** Plaintiffs' claim for damages.

I.  Background

A.  *The Purpose and Applicable Provisions of Ohio's Post-Release Control Statutes*

Starting in 1990, the Ohio General Assembly began to transform the State's criminal sentencing system "to enhance public safety by achieving certainty in sentencing, deterrence, and

Case No. 1:06-CV-158
Gwin, J.

a reasonable use of correctional facilities, programs, and services, [which] shall be designed to achieve fairness in sentencing."  OHIO REV. CODE ANN. § 181.23(B) (1990).  Ohio's "Truth in Sentencing Law," Am. Sub. S.B. No. 2, 146 Ohio Laws, Part IV, 7136, represented the State's first comprehensive legislative revision of its criminal code in more than two decades.  To achieve the law's objectives, the legislature adopted provisions that clearly eliminated both indefinite sentences and parole.  *See* Am. Sub. S.B. No. 2, 146 Ohio Laws, Part IV, 7136.

The Ohio General Assembly acted with greater ambiguity when it came to the delegation of administrative and interpretive authority between the State's judicial and executive branches.  The General Assembly empowered the State's Criminal Sentencing Commission, whose members included representatives from the Ohio Supreme Court and the Director of the Ohio Department of Rehabilitation and Correction, to "[a]ssist the general assembly in the implementation of those aspects of the sentencing structure that are enacted into law." OHIO REV. CODE ANN. § 181.25(A)(1) (1996).  Thus, the statute foresees cooperation between the judiciary and executive in securing the law's objectives.

However, as discussed below, the statute's plain language did not make clear the division of power between the two branches of government.  The law's equivocation on the respective roles of the State's judicial and executive officers led to different interpretations and applications of the statute's requirements.  In large part, this fundamental ambiguity created the basis of this lawsuit and the instant motion for summary judgment.

Three provisions of the Ohio Revised Code contain the primary directives of the State's Truth in Sentencing Law, i.e. Sections 2929.14, 2929.19, and 2967.28.  Considering the provisions in reverse numeric order, Section 2967.28 defines the statutory periods of mandatory and

Case No. 1:06-CV-158
Gwin, J.

discretionary post-release control that apply to specified categories of offenders:

> (B) Each sentence to a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person shall include a requirement that the offender be subject to a period of post-release control imposed by the parole board after the offender's release from imprisonment . . . . Unless reduced by the parole board pursuant to [the relevant division of this law] when authorized under that division, a period of post-release control required by this division for an offender shall be one of the following periods:
>> (1) For a felony of the first degree or for a felony sex offense, five years;
>> (2) For a felony of the second degree that is not a felony sex offense, three years;
>> (3) For a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened physical harm to a person, three years.
> (C) Any sentence to a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (B)(1) or (3) of this section shall include a requirement that the offender be subject to a period of post-release control of up to three years after the offender's release from imprisonment, if the parole board, in accordance with [the relevant division] of this section, determines that a period of post-release control is necessary for that offender.

OHIO REV. CODE ANN. § 2967.28(B), (C) (1996).  As with the other sections of Ohio's Truth in

Sentencing Law, this provision does not contemplate what steps should be taken if the trial court

should fail to include the statutorily-required post-release control as part of its sentence or in its

journal entry.

While Section 2967.28 sets forth the duration of post-release control applicable to specified

felony offenders, Section 2929.19(B)(3) establishes the law's notice and hearing requirement,

including the directive that:

> the [sentencing] court . . . shall do all of the following:

-4-

Case No. 1:06-CV-158
Gwin, J.

> (a) Impose a stated prison term;
> (b) Notify the offender that, as part of the sentence, the parole board may extend the stated prison term for certain violations of prison rules for up to one-half of the stated prison term;
> (c) Notify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a [first, second, or third degree] felony [specified under that Section] . . .
> (d) Notify the offender that the offender may be supervised under section 2967.28 of the Revised Code after the offender leaves prison if the offender is being sentenced for a felony of the third, fourth, or fifth degree [under that Section] . . .
> (e) Notify the offender that, if a period of supervision is imposed following the offender's release from prison, as described in division (B)(3)(c) or (d) of this section, and if the offender violates that supervision or a condition of post-release control imposed under [other relevant sections of this law], the parole board may impose a prison term, as part of the sentence, of up to one-half of the stated prison term originally imposed upon the offender.

OHIO REV. CODE ANN. § 2929.19(B)(3)(a)-(e) (1996).  Again, the statute provides no guidance on what steps the judiciary or prison authorities should take if "the sentencing court" does not comply with the statute's requirements.

Finally, Section 2929.14(F)(1) and (2) set forth the basic prison terms for which an offender may be subject to post-release control:

> (1) If a court imposes a prison term for a felony of the first degree, for a felony of the second degree, for a felony sex offense, or for a felony of the third degree that is not a felony sex offense and in the commission of which the offender caused or threatened to cause physical harm to a person, it shall include in the sentence a requirement that the offender be subject to a period of post-release control after the offender's release from imprisonment . . .
> (2) If a court imposes a prison term for a felony of the third, fourth, or fifth degree that is not subject to division (F)(1) of this section, it

-5-

Case No. 1:06-CV-158
Gwin, J.

> shall include in the sentence a requirement that the offender be
> subject to a period of post-release control after the offender's release
> from imprisonment, in accordance with [the terms above], if the
> parole board determines that a period of post-release control is
> necessary.

OHIO REV. CODE ANN. § 2929.14(F)(1), (2) (1996).  Once more, the statute does not define the

appropriate "next steps" if the court imposed a prison term defined under Section 2929.14(F), but

omitted the statutory requirement of post-release control from the offender's sentence or journal

entry.

Thus, the plain language of S.B. No. 2 does not direct what should happen if the trial court

neglects to impose upon, or notify an offender of, the statutorily-required period of post-release

control.  In fact, on its face, Ohio's Truth in Sentencing Law provides for shared authority between

the court and the parole board to meet the legislation's objectives and uphold the law.  *See, e.g.*,

OHIO REV. CODE ANN. § 181.25(A)(1).  Thus, the statute creates unanswered questions of "proper"

governmental authority for its imposition.

As discussed below, this pervasive ambiguity created a spate of litigation.  As a result, in

July and August 2006, the Ohio General Assembly added "savings clauses" to Sections 2929.14(F),

2929.19(B)(3)(c) and (e), and 2967.28(B).  The language of the 2006 amendment to Section

2929.19(B)(3)(c) illustrates the legislature's changes to the other provisions:

> If a court imposes a sentence including a prison term of a type
> described in division B(3)(c) of this section on or after the effective
> date of this amendment, the failure of a court to notify the offender
> pursuant to division (B)(3)(c) of this section that the offender will be
> supervised under section 2928.67 of the Revised Code after the
> offender leaves prison or to include the judgment of conviction
> entered on the journal a statement to that effect does not negate, limit,
> or otherwise affect the mandatory period of supervision that is
> required for the offender under division (B) of section 2967.28 of the
> Revised Code.

-6-

Case No. 1:06-CV-158
Gwin, J.

OHIO REV. CODE ANN. § 2929.19(B)(3)(c) (July 11, 2006).

Although these amendments "save" the statute's provisions from defeat by a trial court's errors or omissions, they still do not resolve who, i.e. the judiciary or the appropriate administrative agency, has ultimate responsibility for implementing the law's post-release control requirements. Additionally, the scope and validity of these amendments have yet to be tested in state or federal court.

>    B.  *Leading Ohio Court Decisions Regarding the Imposition and Administration*
>        *of the Post-Release Control Statutes*

As described, Ohio's post-release control statutes became effective in 1996.  Since then, Ohio's prisoners and former inmates, the Ohio Department of Rehabilitation and Correction, Adult Parole Authority, and Ohio Supreme Court have interpreted and administered the statutes' scope and content.  The Truth in Sentencing Law has caused much litigation.  *See, e.g.*, *Woods v. Telb*, 89 Ohio St. 3d 504, 733 N.E.2d 1103 (Aug. 3, 2000); *State v. Jordan*, 104 Ohio St. 3d 21, 817 N.E.2d 864 (Dec. 1, 2004); *State v. Harris*, 160 Ohio App. 3d 851, 828 N.E.2d 1086 (May 23, 2005); *Hernandez v. Kelly*, 108 Ohio St. 3d 395, 844 N.E.2d 301 (Jan. 12, 2006); *Watkins v. Collins*, __ Ohio St. 3d __, 2006-Ohio-5082 (Oct. 4, 2006).  Some of this litigation deals with issues similar to the one present in this case, i.e. the respective roles and responsibilities of the judicial and executive branches in administering the post-release control statutes.  *See, e.g.*, *Woods*, 89 Ohio St. 3d at 510-13; *Hernandez*, 108 Ohio St. 3d at ¶¶ 10-23.

Shortly after the Ohio General Assembly enacted the Truth in Sentencing Law, plaintiffs began to complain of federal constitutional harms and state law violations where Ohio's trial judges failed to mention post-release control at the sentencing hearing or omitted the statutory requirements from their sentencing journal entries.  In the leading case, *Woods v. Telb*, 89 Ohio St.3d 504, 733

-7-

Case No. 1:06-CV-158
Gwin, J.

N.E.2d 1103 (2000), the Ohio Supreme Court considered the constitutionality of the post-release control statute and found that the Adult Parole Board's imposition of Section 2967.28 did not violate the Ohio Constitution's separation of powers doctrine or due process guarantees. *Woods*, 89 Ohio St. 3d at 517.  The Court rejected the appellate court's earlier finding against the Adult Parole Authority based upon "the mere fact that the [Adult Parole Authority] is performing the functions that were not contemplated by the trial court in its sentence . . .." *Id.* at 513.  While finding the Ohio post-release control provisions defeated the appellants' constitutional challenges, the Ohio Supreme Court admonished the judiciary that "pursuant to R.C. 2967.28(B) and (C), a trial court must inform the offender at sentencing or at the time of a plea hearing that post-release control is part of the offender's sentence." *Id.*

In *State v. Jordan*, 104 Ohio St. 3d 21, 22, 817 N.E.2d 864 (2004), the Ohio Supreme Court considered what should happen "when a trial court fails to notify an offender about post-release control at the sentencing hearing but incorporates that notice into its journal entry imposing sentence . . .."  Finding that Section 2929.19(B)(3) required the trial court to "[n]otify the offender that the offender will be supervised under section 2967.28 of the Revised Code after the offender leaves prison . . .," the Ohio Supreme Court noted that the trial court failed to comply with this statutory requirement. *Jordan*, 104 Ohio St. 3d at ¶¶ 14, 15.

Having determined that the trial court erred in failing to state the condition of post-release control at the sentencing hearing, the Ohio Supreme Court then considered "whether, under these circumstances, the matter should be remanded for resentencing, as contended by the state, or whether post-release control should be eliminated from the sentence . . .." *Id.* at ¶ 18.  The Court found the cases should be remanded for resentencing: "Because a trial court has a statutory duty to

-8-

Case No. 1:06-CV-158
Gwin, J.

provide notice of postrelease control at the sentencing hearing, any sentence imposed without such

notification is contrary to law . . . Furthermore, where a sentence is void because it does not contain

a statutorily mandated term, the proper remedy is, likewise, to resentence the defendant."  *Id. at* ¶

23 (citing *State v. Beasley*, 14 Ohio St. 3d 74, 471 N.E.2d 774 (1984).

     In *Hernandez v. Kelly*, 108 Ohio St. 3d 395, 844 N.E.2d 301 (2006), the Ohio Supreme Court

once again examined whether an inmate could be placed upon post-release control when he was not

accurately advised of this condition at the time of sentencing and when the sentencing journal entry

did not contain this condition.  In circumstances where the judgment entry did not contain the

statutory post-release control requirement, the Ohio Supreme Court ruled that post-release control

could not be imposed by the Adult Parole Authority.  *See Hernandez*, 108 Ohio St. 3d at ¶ 32.

Although the Ohio Supreme Court in *Jordan* remanded the case for re-sentencing when the trial

court failed to orally advise the defendant regarding post-release control, in Court in *Hernandez*

ruled that post-release control could not be imposed, even after a re-sentencing hearing: "[t]he trial

court in Hernandez's case committed error because it did not notify him at his sentencing hearing

that he would be subject to mandatory postrelease control and did not incorporate postrelease control

into its sentencing entry."  *Id.* at ¶ 16.  Despite apparently parting from the thrust of *Jordan*'s

reasoning on the issue of re-sentencing, the *Hernandez* Court upheld *Woods* in recognizing that

Section 2967.28 confers authority to the Adult Parole Authority to impose post-release control in

certain instances, the Ohio Supreme Court said that by limiting the authority to impose this sanction,

the Court avoided separation-of-powers problems.  *Id.* at ¶ 20.

     Thus, from 2000 to 2006, the Ohio Supreme Court addressed a variety of factual and legal

questions pertaining to the proper division of power between the State's judicial and executive

Case No. 1:06-CV-158
Gwin, J.

branches and did so with seemingly conflicting results.  At the same time, the Ohio General

Assembly reacted to the flood of litigation by adding "savings clauses" to the statute's operative

provisions.  With regard to the issue before the Court, the interplay between Ohio's General

Assembly and Supreme Court, as well as within the decisions of the Ohio Supreme Court itself,

demonstrates that the State's interpretation and application of its post-release control statute

continues to evolve.

> *C.  The Instant Motion for Summary Judgment and Parties' Positions*

Plaintiffs say that Defendants acted beyond the scope of their authority when they imposed

terms and conditions of post-release control that either do not appear, or are poorly-articulated, in

the sentencing journal entries of the plaintiff class. [Docs. 1, 14, 75.]  Plaintiffs assert that Ohio's

law "clearly establishes" that:

> [o]nly judges have the power to impose a criminal sentence after a
> citizen is convicted of a crime.  Wardens, parole officers and other
> executive officials may be called on to implement a sentence, but
> have no authority to perform the judicial function of imposing a
> sentence in the first instance.

[Doc. 14.]

In the face of this purportedly "clearly established" law, Plaintiffs say that "Defendants have

nonetheless illegally imposed [post-release control] on thousands of inmates released from prison

who did not have [post-release control] imposed by the sentencing judge in their sentencing entries."

*Id.*  Plaintiffs assert that Defendants' actions deprived them of "rights, privileges and immunities

secured by the First, Eighth and Fourteenth Amendments to the U.S. [sic] Constitution," including

their right to be free from deprivation of liberty and property without due process, the right to travel,

the right to associate with others, and the right to be free of cruel and unusual punishment.  *Id.*  As

-10-

Case No. 1:06-CV-158
Gwin, J.

a result, Plaintiffs seek damages under Section 1983.  *Id.*

      In support of their motion for summary judgment, Defendants say that Plaintiffs do not raise a constitutional claim and cannot demonstrate that Ohio had a "clearly established" post-release control law at the time of Defendants' allegedly impermissible acts. [Docs. 50, 92.]  Further, Defendants assert that Plaintiffs show that the Ohio Department of Rehabilitation and Correction and Adult Parole Authority undertook objectively reasonable actions in implementing Ohio's statutory requirements for post-release control.  *Id.*  Thus, Defendants conclude that Plaintiffs' claims for damages under Section 1983 should fail.  *Id.*

      To survive Defendants' motion for summary judgment, Plaintiffs must demonstrate actual constitutional violations and overcome the presumption of Defendants' qualified immunity to damages in civil actions.  In their response to Defendants' motion for summary judgment, Plaintiffs abandon their earlier reference to their First and Eighth Amendment rights and argue that contested facts around their Fourteenth Amendment claim make summary judgment inappropriate for Defendants. [Doc. 75.]  In support of their claim, Plaintiffs reiterate their earlier separation of powers argument that:

> [a] court speaks only through its journal entries.  Executive officers who ignore entries do so at their peril.  Defendants in this case have ignored journal entries and deprived class members of liberty without due process for many years.  Defendants have incorrectly regarded the [post-release control] sentencing statutes as self-executing. Defendants have been repeatedly advised by the Ohio Supreme Court that only the trial court can impose [post-release control] on an offender.  Defendants have ignored these holdings.  They acted completely without authority and therefore have not engaged in discretionary functions.  They also have acted unreasonably in violation of clearly established law.  Their reliance on legal counsel is not extraordinary and does not excuse their repeated failures to follow the law.  Defendants are subject to damages and are not entitled to summary judgment based on qualified immunity.

-11-

Case No. 1:06-CV-158
Gwin, J.

*Id.*

Plaintiffs also re-argue that qualified immunity cannot shield Defendants from liability for civil damages because, in imposing post-release control, the Ohio Department of Rehabilitation and Correction and Adult Parole Authority acted "unreasonably" and beyond the scope of their authority in contravention of "clearly established" law. *Id.* Plaintiffs conclude that the Court should deny Defendants' motion for summary judgment and grant Plaintiffs' request for damages as redress for their Fourteenth Amendment injuries. *Id.*

## II.  Legal Standard

The Fourteenth Amendment of the Constitution provides in part:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV § 1.

The Fourteenth Amendment guarantees substantive and procedural due process by prohibiting government officials, i.e. "state actors," from depriving a person of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1. *See also Lugar v. Edmunson Oil Co.*, 457 U.S. 922, 924 (1982). A court addresses procedural due process questions in two steps: the first asks whether there exists a life, liberty, or property interest with which a state actor has interfered; the second examines the constitutional sufficiency of the procedures attendant upon that deprivation. *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989) (modified by *Sandin v. Conner*, 515 U.S. 472, 480-82 (1995)). "Violations of substantive due process are . . . divided into two kinds: (1) deprivation of a particular constitutional guarantee, and (2) actions that 'government

-12-

Case No. 1:06-CV-158
Gwin, J.

officials may not take no matter what procedural protections accompany them,' alternatively known as actions that 'shock the conscience.'" *Braley v. City of Pontiac*, 906 F.2d 220, 224-25 (6th Cir. 1990).

Section 1983 of Title 42 of the United States Code provides a remedy for deprivations of constitutional and federal statutory rights when those deprivations take place "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Lugar*, 457 U.S. at 924 (citing 42 U.S.C. § 1983). *See also Sample v. Bailey*, 409 F.3d 689, 695 (6th Cir. 2005). The basic purpose of a Section 1983 award "should be to compensate persons for injuries caused by the deprivation of constitutional rights." *Carey v. Piphus*, 435 U.S. 247, 254 (1978). Thus, Section 1983 claims present the threshold issue of which, if any, of the plaintiff's constitutional rights have been violated by which state actors. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 494, 498-99 (1973).

State actors faced with a civil suit under Section 1983 may be immune from liability for damages. *See, e.g.*, *Richardson v. McKnight*, 521 U.S. 399, 412 (1997) (concluding that "private prison [employees], unlike those who work directly for the government, do not enjoy immunity from suit in a § 1983 case"). However, Section 1983 generally provides state actors with a qualified, not absolute, scope of immunity. *Harlowe v. Fitzgerald*, 457 U.S. 800, 807 (1982). Qualified immunity "protect[s] officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official activity." *Butz v. Economou*, 438 U.S. 478, 506 (1978). Thus, the availability of the qualified immunity defense means that a court need not allow Section 1983 damage suits to proceed to trial, but can dismiss them upon the showing of a properly-supported motion for summary judgment. *Id.* at 508.

-13-

Case No. 1:06-CV-158
Gwin, J.

As a matter of law, qualified immunity shields a state actor from civil damages in appropriate

cases:

> Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.  On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred.  If the law at the time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful.  Until this threshold immunity question is resolved, discovery should not be allowed.  If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct.  Nevertheless, if the official pleading the defense claims extraordinary circumstances and can prove that he neither knew nor should have known of the relevant legal standard, the defense should be sustained. But again, the defense would turn primarily on objective factors.
>
> [B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery.  We therefore hold that government officials performing discretionary functions generally are shielded from liability for damages in so far as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known.

*Harlowe*, 457 U.S. at 818-19, 817-818.

The Sixth Circuit has distilled *Harlowe* to require a Section 1983 plaintiff to make a three-

step showing to avoid dismissal on qualified immunity grounds.  *See Feathers v. Aey*, 319 F.3d 843,

848 (6th Cir. 2003).  First, the plaintiff must show that a state actor has violated his constitutional

rights.  *Id.  See also Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (requiring courts faced with a

qualified immunity claim to first assess the presentation of the asserted constitutional claim "to weed

out such suits which fail the test").  Second, the plaintiff must show that the violation involved a

-14-

Case No. 1:06-CV-158
Gwin, J.

"clearly established constitutional right of which a reasonable person would have known."  *Id.*

Finally, the plaintiff must demonstrate the objective unreasonableness of that the action allegedly

taken by the government official in light of the "clearly established constitutional rights."  *Id.* (citing

*Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*) and *Saucier v. Katz*, 533 U.S. 194

(2001)) (internal quotations omitted).

In responding to a summary judgment motion based on qualified immunity, "plaintiffs may

not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure

that [targeted] officials are not harassed by frivolous lawsuits."  *Economou*, 438 U.S. at 508.  A

court may not grant summary judgment unless all of the submissions to it "show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  FED. R. CIV. P. 56(c).  The moving party bears the burden of demonstrating the absence of

a material factual question and, in making this determination, the court must view all facts in the

light most favorable to the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

(1986).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When the moving party has

asserted facts showing that the non-moving party's claims cannot be sustained, the non-moving

party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest

on the "mere allegations or denials" of the moving party's pleadings.  FED. R. CIV. P. 56(e).  The

non-moving party must come forward with specific facts that amount to more than a mere scintilla

of evidence.  *Liberty Lobby*, 477 U.S. at 252.  The court has no duty to "search the entire record to

establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479-80 (6th Cir. 1989).

III.  Analysis

-15-

Case No. 1:06-CV-158
Gwin, J.

Viewing the facts in the light most favorable to Plaintiffs, the non-moving party, and assessing Plaintiffs' presentation of their constitutional claim, the Court finds that Plaintiffs' claims fail as a matter of law and, as a result, Defendants are shielded from civil damages by the doctrine of qualified immunity.

*A. Plaintiffs Do Not State a Constitutional Claim Capable of Redress Under Section 1983*

As directed by *Gilley*, 500 U.S. at 232, and *Feathers*, 319 F.3d at 848, the Court begins its analysis with an assessment of Plaintiffs' asserted constitutional harm.

As a preliminary matter, this motion requires that the Court firmly apply the Federal Rules of Civil Procedure in considering Plaintiffs' challenge to Defendants' claim to qualified immunity. *See Economou*, 438 U.S. at 508.  In their initial and amended complaints, Plaintiffs say that Defendants unconstitutionally impeded their rights under the First, Eighth, and Fourteenth Amendments by imposing upon them the requirements of Ohio's Truth in Sentencing Law. However, in their response to Defendants' summary judgment motion, Plaintiffs do not "set forth specific facts showing that there [are] genuine issue[s] for trial," FED. R. CIV. P. 56(e), with regard to their First and Eighth Amendment allegations.  As such, the Court concludes that Plaintiffs abandoned these claims and focuses its analysis on Plaintiffs' generalized due process argument as presented in their response to Defendants' motion for summary judgment.

Thus, to bring suit under Section 1983, Plaintiffs must show that Defendants violated their Fourteenth Amendment rights.  Attempting to meet this burden, Plaintiffs say that they enjoy a federal constitutional right to have post-release control imposed only by Ohio's trial court judges and never by the State's Adult Parole Authority.  In essence, Plaintiffs argue that they have a constitutional right to a federal separation of powers protection that grants the authority to impose

-16-

Case No. 1:06-CV-158
Gwin, J.

post-release control solely to Ohio's judicial officers.

As a matter of constitutional law, this argument loses.  Our federal system reserves to the states the right to divide power between their respective branches of government.  As Justice Harlan said long-ago for a unanimous Supreme Court:

> Whether the legislative, executive and judicial powers of a State shall be kept altogether distinct and separate, or whether persons or collections of persons belonging to one department may, in respect to some matters, exert powers which, strictly speaking, pertain to another department of government, is for the determination of the State.  And its determination one way or the other cannot be an element in the inquiry whether the due process of law prescribed by the Fourteenth Amendment has been respected by the State or its representatives when dealing with matters involving life or liberty.

*Dreyer v. Illinois*, 187 U.S. 71, 84 (1902).  *See Sweezy v. New Hampshire*, 354 U.S. 234, 254 (1957) (citing *Dreyer* and finding that "the concept of separation of powers embodied in the United States Constitution is not mandatory in state governments").  *See also Printz v. United States*, 521 U.S. 898, 908 n.2 (1997) (citing *Sweezy* and noting that the line between the executive and judicial branches "is not necessarily identical with the line established by the Constitution for federal separation-of-powers purposes"); *Mayor of Philadelphia v. Educ. Equality League*, 415 U.S. 605, 615 n.13 (1974) (citing *Sweezy* and noting that the "Constitution does not impose on the States any particular plan for the distribution of governmental powers"); *Hughes v. Superior Court of Cal. in and for Contra Costa County*, 339 U.S. 460, 467 (1950) (stating ". . . the Fourteenth Amendment leaves the States free to distribute the powers of government as they will between their legislative and judicial branches").  *And see Johnson v. Voinovich*, 49 Fed. Appx. 1 (6th Cir. 2002) (finding "Ohio statutes allegedly giving parole authority power to legislate policies, execute those policies, and adjudicate whether its execution was correct did not implicate federal separation of powers

Case No. 1:06-CV-158
Gwin, J.

principles"); *Gozy v. Newland*, 52 Fed. Appx. 920 (9th Cir. 2002) (noting that plaintiff "contends that the Board violates the state and federal doctrine of separation of powers by setting parole release dates because it is determining terms of imprisonment, a judicial function. This claim is not cognizable because the federal doctrine of separation of powers does not extend to the states under the Fourteenth Amendment").

Here, Ohio's Truth in Sentencing Law defines the allowable spheres of responsibilities for both the State's judiciary and administrative authorities, albeit in an incomplete manner. *See, e.g.*, OHIO REV. CODE ANN. § 2929.14(F)(1), (2); § 2929.19(B)(3)(a)-(e); § 2967.28(B), (C). Further, Ohio's law also requires the State's Criminal Sentencing Commission, which includes representatives of the Ohio Supreme Court and the Director of Rehabilitation and Correction, to "assist the general assembly in the implementation of those aspects of the sentencing structure that are enacted into law." OHIO REV. CODE ANN. § 181.25(A)(1). In 2000, the Ohio Supreme Court upheld the constitutionality of this separation of powers. *See Woods*, 89 Ohio St. 3d at 517. Thus, while Plaintiffs may have state law claims regarding the Adult Parole Authority's imposition of post-release control upon them, they do not state a violation of a constitutional right capable of redress under Section 1983.

Even if Plaintiffs overcame the fundamental deficiency of their separation of powers complaint, they still would not have a cognizable procedural or substantive due process claim under the Fourteenth Amendment. With regard to procedural due process, a liberty interest may arise from the due process clause or from state law. U.S. CONST. amend. XIV. A state creates a protected liberty interest "by placing substantive limitations on official discretion." *Hewitt v. Helms*, 459 U.S. 460, 462 (1983) (limited by *Sandin v. Connor*, 515 U.S. 472, 483-84 (1995)). Additionally, the state

-18-

Case No. 1:06-CV-158
Gwin, J.

law must contain "explicitly mandatory language, i.e., specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow." *Ky. Dep't of Corr.*, 490 U.S. at 471-72 (modified by *Sandin*, 515 U.S. at 480-82).

While Plaintiffs allege that the Adult Parole Authority violated Ohio's Truth in Sentencing Law, they fail to clearly indicate which specific provision the agency purportedly violated.  Instead, Plaintiffs stitch-together elements of the statute and overlay them with broad interpretations of Ohio's case law as it developed from *Woods* to *Hernandez.*  Plaintiffs present one possible interpretation of the statute and precedent case law, but do not point to "explicitly mandatory language" that establishes their federal procedural due process right.  On a motion for summary judgment, once the moving party makes the initial showing of an absence of genuine fact, the non-moving party must come forward with specific facts which amount to more than a mere scintilla of evidence.  *Liberty Lobby*, 477 U.S. at 252.  Plaintiffs have failed to meet their burden as to this claim.

With regard to substantive due process, Plaintiffs must demonstrate one of two types of violations: "(1) deprivation of a particular constitutional guarantee, [or] (2) actions that 'government officials may not take no matter what procedural protections accompany them,' alternatively known as actions that 'shock the conscience.'" *Braley*, 906 F.2d at 224-25.  Plaintiffs cannot maintain a substantive due process claim based on Defendants' alleged improper imposition of Ohio's statutory post-release control.  Because this claim is not based on a particular constitutional guarantee, substantive due process of the first type is inapplicable.  Further, the Sixth Circuit appears to have abandoned the "shock the conscience" test in all areas except the use of excessive force by police. *See, e.g.*, *Braley*, 906 F.2d at 226.  Regardless of *Braley*'s "shock the conscience" limitation, the

-19-

Case No. 1:06-CV-158
Gwin, J.

ambiguity in Ohio's Truth in Sentencing Law and conflicting Ohio Supreme Court positions on the issue prohibit the Court from finding that the imposition of statutory post-release control by Defendants "shocks the conscience." Consequently, Plaintiffs do not establish a substantive due process claim.

As a result, Plaintiffs fail *Feathers*' first requirement that they show that Defendants violated their Fourteenth Amendment rights.

*B. Any Injury to Plaintiffs Did Not Involve a "Clearly Established Constitutional Right of Which a Reasonable Person Would Have Known"*

Having found that Plaintiffs do not assert a violation of their Fourteenth Amendment rights, the Court need not further proceed with the *Feathers* analysis. Nevertheless, the Court briefly notes that Defendants did not violate Plaintiffs "clearly established" rights through their imposition of the statutory post-release control requirements.

First, none of the United States Supreme Court, the Sixth Circuit, or other federal courts have previously ruled that imposition of post-release control under Ohio's Truth in Sentencing Law by the State's Department of Rehabilitation and Correction or the Adult Parole Authority violates federal constitutional rights. Thus, no "clear establishment" of Plaintiffs' claimed due process rights existed at the time of their alleged infringement by Defendants.

Next, both Defendants and Plaintiffs correctly highlight the evolution of Ohio's state court jurisprudence on the issues of, *inter alia*, the constitutionality of the post-release control statutes under Ohio's law and the "proper" state actor in implementing the laws' requirements. Attached to their response to Defendants' summary judgment motion, Plaintiffs provide a compendium of more than seventy cases dealing with various issues arising from a myriad of ambiguities in the post-release control statutes. Far from showing the "clear establishment" of the law at the time

-20-

Case No. 1:06-CV-158
Gwin, J.

Defendants allegedly violated their constitutional rights, Plaintiffs' compendium underscores the

manifestly unclear state of Ohio's post-release control law in the years following the statutes' initial

enactment.

Plaintiffs invite the Court to accept the decision-date of *State v. Jordan*, i.e. January 24,

2004, as the date after which Ohio's issues of post-release control became "clearly established"

rules of law. Plaintiffs rely on *Jordan*, as well as *Hernandez v. Kelly*, for the proposition that

> [t]he plain language of R.C. 2929.14(F) and 2967.28 evinces the
> intent of the General Assembly not only to make all incarcerated
> felons subject to mandatory or discretionary postrelease control but
> also to require all sentencing trial courts in ths state to include
> postrelease control as a part of the sentence for every incarcerated
> offender.

*Hernandez*, 108 Ohio St. 3d at 399.

The Court declines Plaintiffs' invitation. The Ohio General Assembly's revision of Section

2967.28 in response to *Jordan* and *Hernandez* suggests the legislature intended that the Adult Parole

Authority impose post-release control despite any failure to include this sanction in the sentencing

judgment. In July and August 2006, the statue's plain language changed when the Ohio General

Assembly added "savings clauses" to the law's operative provisions. The new language provides

that "the failure of a court to include a post-release control requirement in the sentence pursuant to

[the relevant division] does not negate, limit, or otherwise affect the mandatory period of post-

release control that is required under division (B) of section 2967.28 of the Ohio Revised Code."

*See* OHIO REV. CODE ANN. § 2929.14(F). *See also* OHIO REV. CODE ANN. § 2929.19(B)(3)(c),(e);

2967.28(B). On their face, the Ohio General Assembly's 2006 amendments apparently intend to

reverse the *Hernandez* decision.

This new language does not resolve the "proper" state actor question, but it does appear to

-21-

Case No. 1:06-CV-158
Gwin, J.

keep inadequately documented sentencing journal entries within the purview of the statute. No court

has yet considered this new language or its implication for other statutory provisions or existing

precedent. Thus, the law continues to evolve. Given this on-going interpretation and flux, the Court

cannot find that Plaintiffs' alleged injury involved "clearly established constitutional rights of which

a reasonable person should have known." *Feathers*, 319 F.3d at 848.

### C. Defendants Did Not Take "Objectively Unreasonable" Actions by Imposing Post-Release Control Absent "Clearly Established" Law to the Contrary

Finally, Plaintiffs cannot show that Defendants undertook "objectively unreasonable" actions

when they imposed post-release control despite any clear imposition of this sanction in sentencing

entries.

As discussed above, Ohio does not yet have "clearly established" law regarding the

implementation and administration of post-release control. In the absence of clear law, Plaintiffs

cannot contend that Defendants violated their constitutional rights. *See, e.g.*, *Harlow*, 457 U.S. at

818. Further, neither Plaintiffs nor the Court could reasonably expect the Ohio Department of

Rehabilitation and Corrections or Adult Parole Authority to "anticipate subsequent legal

developments" that more narrowly-defined the agencies' roles in the implementation of post-release

control. *Id.*

Nor could Defendants be said to "know" that the law forbade the Adult Parole Authority

from exercising its traditional scope of authority by implementing post-release control in a manner

apparently required by the Ohio statutes. *Id.* As a result, Plaintiffs' contention that Defendants

violated their clearly established due process rights after the "clear establishment" of the law by

*State v. Jordan* on January 24, 2004 is unavailing. Therefore, Plaintiffs do not allege "sufficient

facts supported by sufficient evidence" to show the "objective unreasonableness" of the imposition

Case No. 1:06-CV-158
Gwin, J.

of statutory post-release control by the Ohio Department of Rehabilitation and Corrections or Adult

Parole Authority in the absence of "clearly established" law.  *Feathers*, 319 F.3d at 848.

Relatedly, Plaintiffs contend that Defendants acted *ultra vires* in their imposition of the

statutory requirements of post-release control.  Plaintiffs base their argument on the idea that

"[i]mposing [post-release control] is a judicial function and not a discretionary executive function.

These defendants usurped that judicial function and therefore" acted beyond their discretionary

authority.  The Court does not agree.

As previously stated, as a matter of federal law, neither Ohio's judiciary nor executive

officials possess the inherent "authority" to impose post-release control on a convicted offender.

Instead, this power resides in the legislature through the enactment of the State's laws.  The Ohio

General Assembly enacted the Truth in Sentencing Law to mandate post-release control for certain

classes of convicted offenders.  As discussed, Section 2967.28 makes it clear which offenders come

within the stricture of the law; the other provisions less clearly define the proper roles of the various

state actors responsible for the implementation and administration of Ohio's criminal justice system.

Further, in administering the implementation of the Truth in Sentencing Law, Defendants

faced seemingly conflicting obligations.  On one hand, Section 2929.19(B)(3), specifically requires

Ohio's sentencing courts to "[n]otify the offender that the offender will be supervised under section

2967.28 of the Revised Code after the offender leaves prison . . .."  In *Jordan*, the Ohio Supreme

Court held that "unless a trial court includes postrelease control in its sentence, the Adult Parole

Authority is without authority to impose it."  104 Ohio St.3d at ¶ 19.  Conversely, another provision

of the law requires that "[b]efore the prisoner is released from imprisonment, the parole board *shall*

impose upon a prisoner . . . one or more post-release control sanctions" OHIO REV. CODE ANN. §

-23-

Case No. 1:06-CV-158
Gwin, J.

2967.28(D)(1) (emphasis added).  Enactments of the Ohio General Assembly enjoy a strong presumption of constitutionality.  *See, e.g.*, *State ex rel. Jackman v. Court of Common Pleas of Cuyahoga County*, 9 Ohio St. 2d 159, 224 N.E.2d 906 (1967); *State ex rel. Ohio Cong. of Parents & Teachers v. State Bd. of Educ.,* 2006 WL 3053072 at ¶ 20, ___ N.E.2d ___ (Ohio 2006).  Thus, faced with the statute's ambiguity and apparent conflicting legal obligations, the Ohio Department of Rehabilitation and Corrections and Adult Parole Authority acted reasonably given the uncertainty surrounding the proper imposition and administration of the State's Truth in Sentencing Law.

Consequently, because Plaintiffs do not prove a constitutional violation of a clearly established right resulting from Defendants' objectively unreasonable acts, the Court finds Defendants entitled to the protection of qualified immunity from Plaintiffs' claims for civil damages.

## IV.  Conclusion

For these reasons, the Court holds that Defendants are protected by qualified immunity from Plaintiffs' claim for civil damages.  As a result, Plaintiffs' claim fails as a matter of law and the Court **GRANTS** Defendants' motion for summary judgment and **DISMISSES** Plaintiffs' complaint with regard to its claim for damages.

IT IS SO ORDERED.


Dated: November 27, 2006                    s/          *James S. Gwin*
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

-24-